UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
In re:                                                              :
                                                                    :    Chapter 11
MANHATTAN JEEP CHRYSLER DODGE, INC., *et al.*,[1]   :
                                                                    :    Case No. 18-10657(MEW)
                                           Debtors.          :
                                                                    :    (Jointly Administered)
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**BENCH DECISION CONFIRMING THE APPLICABILITY OF THE COURT'S BAR DATE ORDER TO THE WITHDRAWAL LIABILITY CLAIMS OF THE LOCAL 868 INTERNATIONAL BROTHERHOOD OF TEAMSTERS PENSION FUND**

Debtors Manhattan Jeep Chrysler Dodge, Inc. and Manhattan Automotive, LLC filed voluntary petitions for chapter 11 relief on March 9, 2018. Prior to the bankruptcy filings, and continuing for an undetermined amount of time after the bankruptcy filings, Manhattan Jeep was a participant in a multiemployer pension plan known as the Local 868 International Brotherhood of Teamsters Pension Fund (the "Fund"). A permanent cessation of operations or other termination of Manhattan Jeep's obligations to contribute to the Fund would trigger a "withdrawal liability" to the Fund as a matter of federal statute. *See* 29 U.S.C. §§ 1381-1383. Manhattan Automotive, as an entity under common control with Manhattan Jeep, shared joint and several liability for such contingent obligations.

Manhattan Jeep made clear in its early filings that it planned to sell its assets and business and then to liquidate. Subsequently, by Order dated September 9, 2018, the Court approved a sale of substantially all of the debtors' assets.

---

[1]   The last four digits of each Debtor's taxpayer identification number are as follows: Manhattan Jeep Chrysler Dodge, Inc. (2520); Manhattan Automotive, L.L.C. (3993). The Debtors' addresses are 678 Eleventh Avenue, New York, NY 10019 and 629 West 54th Street, New York, NY 10019, respectively.

1

Earlier, on April 12, 2018, the Court entered an Order that established May 23, 2018 as the deadline for the filing of proofs of claim. The Fund did not file a proof of claim at that time. After the sale of the debtors' assets, however, the Fund notified Manhattan Jeep in September 2018 that the Fund believed that a withdrawal liability was owed. Later, in November 2018, the Fund provided Manhattan Jeep with the Fund's calculation of the amount of the withdrawal liability. However, it was not until more than two more months passed, at the end of January 2019, that the Fund filed motions seeking permission to file proofs of claim based on the alleged withdrawal liabilities. [ECF Docket Nos. 140, 141.]

In its motions and in its reply papers, the Fund has argued that its withdrawal liability claims were not even "claims" at the time of the debtors' bankruptcy filings or at the time of the court-approved bar date, and that the withdrawal liability claims therefore were not subject to the bar date. Alternative, the Fund has asked for permission to file belated claims on grounds of "excusable neglect." *See* Fed. R. Bankr. P. 9006. The debtors oppose the requested relief, and the Court heard argument on February 27, 2019.

The Fund's claim that as a matter of law it had no withdrawal liability "claim" at all at the time of the bar date, even on a contingent and unmatured basis, is a legal contention that I have considered and with which I disagree.

The Fund relies on the Sixth Circuit decision in *CPT Holdings, Inc. v. Indus. & Allied Emps. Union Pension Plan Local 73*, 162 F.3d 405, 409 (6th Cir. 1998), in which the Sixth Circuit held that no claim for withdrawal liability existed at all until an actual withdrawal occurred. It is notable that in the *CPT* case there was no withdrawal at all during the bankruptcy case or even for a year after the confirmation of the plan. Instead, there was confirmation of a plan of reorganization, and a continuation of all of the prior pension fund arrangements and

2

contributions for 19 months after the plan of reorganization became effective, at which point a secured creditor foreclosed on its collateral and liquidated the reorganized company.

The court held in *CPT* that under the circumstances of that particular case a pension fund had no "claim" that had been discharged by the prior confirmation of a plan of reorganization. Frankly, in this regard, I cannot help but wonder whether a better way to have explained the decision in *CPT* would have been to say that CPT's post-bankruptcy continued participation in the relevant pension plan, and in the benefits of that plan, had the effect of renewing and keeping intact CPT's contingent statutory withdrawal liability. Usually a debtor may not use bankruptcy to shed the burdens of an arrangement while keeping the benefits, yet that is exactly what CPT was trying to do. It wanted to be, and was, a continued post-bankruptcy participant in the pension plan, but then after the fact it wanted to redefine the statutory terms of its participation and to use its prior bankruptcy to restrict its statutory withdrawal obligations.

In any event, the unusual circumstances that were present in *CPT* are not present here. More importantly, if the rationale of the *CPT* decision were to call for me to exempt the Fund's withdrawal liability claim from the bar date, as the Fund contends, I must respectfully disagree with that rationale and decline to follow it.

The bar date and the Chapter 11 process generally are not limited to claims that are subject to no further contingencies and are presently fully matured and enforceable. The word "claim" as defined in the Bankruptcy Code includes any right to payment "whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured." 11 U.S.C. § 101(5)(A). By its terms, the definition plainly encompasses claims that have not fully matured, that are contingent on the happening of future events, and that might not yet be fully liquidated and enforceable.

3

The gist of the *CPT* decision, as argued by the Fund, is that no withdrawal liability claim could have existed at the time of the plan confirmation in that case because no right to the payment of withdrawal liability had matured and become legally collectible. Such a ruling read is contrary to the way the word "claim" is defined in the Bankruptcy Code and contrary to the way the word "claim" was defined in the bar date order in this case.

If I were to adopt the Fund's view, and if contingent and unliquidated and unmatured claims were not even to be treated as "claims" until the day when they become fully enforceable, then a host of contingent and unmatured claims – whether arising under guarantees, indemnities, attorneys' fee reimbursement provisions, or other sources – would all escape the Court's bar date orders. A company cannot reorganize, and cannot structure potential distributions to its claimants, without having an ability to identify the universe of those potential claimants. That is the purpose that a bar date order serves. A bar date order could not serve that purpose if one were to adopt the restrictive interpretation of the word "claim" that the Fund urges me to adopt, because too many claims would simply escape the reach of the bar date.

I note that the *CPT* decision is contrary to the decision in *In re CD Realty Partners*, 205 B.R. 651, 660 (Bankr. D. Mass. 1997), which I believe reflects the better view. *CPT* is also contrary to the decision in *In re Crane Rental Co.*, 334 B.R. 73, 76-77 (Bankr. D. Mass. 2005), in which the court declined to follow *CPT* and adhered to the decision in *In re CD Realty Partners*.

In addition, the *CPT* decision, if it were interpreted in the way the Fund urges, logically would require that any withdrawal liability be treated as an administrative expense claim; if there were no claim at all (even a contingent one) until some time after the bankruptcy filing, then how could the claim be a pre-petition claim? In this respect, however, the rule that the Fund urges me

4

to adopt would be contrary to prevailing and controlling rulings in this Circuit and in this District.  *See Trustees of Amalgamated Ins. Fund v. McFarlin's, Inc.*, 789 F.2d 98, 103-04 (2d Cir. 1986) (holding that withdrawal liability is a pre-petition claim); *Amalgamated Ins. Fund v. William B. Kessler, Inc.*, 55 B.R. 735, 740 (S.D.N.Y. 1985) (treating withdrawal liability as a pre-petition claim that accrued prior to bankruptcy.)

For these reasons, I must reject the idea that the withdrawal liability was not even a claim that was subject to the bar date order. The real issue to be decided is whether "excusable neglect" has been established for the failure to file the claims at an earlier date.  In order to assess that contention, I need testimony and other evidence.  I direct the parties to confer as to a convenient date for an evidentiary hearing, and then to call to confirm a hearing date with chambers.

Dated: New York, New York
      March 4, 2019

                                            /s/ **Michael E. Wiles**
                                            UNITED STATES BANKRUPTCY JUDGE