**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

―――――――――――――――――――――――x
:
In re:                                                              :          Chapter 11
                                                                     :
**MANHATTAN JEEP CHRYSLER DODGE,**     :          Case No. 18-10657 (MEW)
**INC., et al.,**[1]                                           :
                                                                     :          Jointly Administered
                                  Debtors.             :
―――――――――――――――――――――――x

**DECISION REGARDING OBJECTIONS TO CONFIRMATION
OF DEBTORS' PROPOSED PLAN OF LIQUIDATION**

A P P E A R A N C E S :

WILK AUSLANDER LLP
   Attorneys for Debtors
   1515 Broadway
   New York, NY 10036
   BY:  ERIC SNYDER, ESQ.
         ELOY A. PERAL, ESQ.

ARCHER, BYINGTON, GLENNON & LEVINE LLP
   Attorneys for Local 868 International
   Brotherhood of Teamsters Pension Fund
   One Huntington Quadrangle
   Suite 4C10
   Melville, NY 11747
   BY:  JOHN H. BYINGTON III, ESQ.

**MICHAEL E. WILES
UNITED STATES BANKRUPTCY JUDGE**

Debtors Manhattan Jeep Chrysler Dodge, Inc. ("Manhattan Jeep") and Manhattan

Automotive, LLC ("ARF" and together with Manhattan Jeep, the "Debtors") seek confirmation

of their Amended Plan of Liquidation [Dkt. No. 181]. Objections to confirmation were filed by

---

[1] The last four digits of each Debtor's taxpayer identification number are as follows: Manhattan Jeep Chrysler Dodge, Inc. (2520); Manhattan Automotive, L.L.C. (3993). The Debtors' addresses are 678 Eleventh Avenue, New York, NY 10019 and 629 West 54th Street, New York, NY 10019, respectively.

1

the trustees of Local 868 Pension Fund (the "Fund") and by the New York City Department of Finance.  The Court heard argument and the parties presented evidence with respect to the request for confirmation and the objections on May 10, 2018.  At the conclusion of the hearing the Court announced its decisions and indicated that it would incorporate its rulings into this written decision.

## The Objectors' Claims

**The Fund**.  Manhattan Jeep filed Schedules of Assets and Liabilities in which it listed a debt owed to the Fund in the amount of $2,994.  [Dkt. No. 36].  The claim was not listed as contingent, unliquidated or undisputed.  In the absence of an amendment to the Schedules, or an objection by a party in interest, the scheduled claim constitutes an allowed unsecured claim in Manhattan Jeep's chapter 11 case.  *See* 11.U.S.C. § 1111(a).  The Schedules filed by ARF, however, did not list any claim in favor of the Fund.

On April 12, 2018, the Court entered an order, pursuant to Rule 3003 of the Federal Rules of Bankruptcy Procedure, that established May 23, 2018 as the deadline (or "bar date") by which all proofs of claim against the Debtors needed to be filed.  Governmental units were entitled to additional time by virtue of section 502(b)(9) of the Bankruptcy Code, so that the deadline for the filing of claims by governmental units was September 5, 2018.  The Order notified all potential claimants that "pursuant to Bankruptcy Rule 3003(c)(2), all holders of claims that fail to comply with this Order by timely filing a proof of claim in appropriate form shall not be treated as a creditor with respect to such claim for the purposes of voting and distribution." [Dkt. No. 35.]

The Fund did not file a proof of claim prior to the deadline set by the Court.  At the end of January 2019, however, the Fund filed motions seeking permission to file proofs of claim

against both Debtors based on alleged withdrawal liabilities due to the termination of Manhattan Jeep's participation in a multi-employer pension plan. The Fund contended that its claims were not subject to the bar date, but the Court rejected that contention for the reasons set forth in a Bench Decision dated March 4, 2019. [Dkt. No. 165.] The Court scheduled an evidentiary hearing to consider the Fund's alternative request for permission to file late claims on the grounds of excusable neglect pursuant to Rule 9006 of the Federal Rules of Bankruptcy Procedure, and it conducted that evidentiary hearing on March 28, 2019. At the conclusion of the hearing, the Court held that the Fund had failed to prove excusable neglect and it denied the request for relief from the deadline imposed by the bar date order. The decision that was announced by the Court on March 28 was incorporated into a written Bench Decision that was filed on April 3, 2019. [Dkt. No. 187.] The Fund has filed appeals from the Court's rulings.

During the March 28, 2019 hearing the Court noted that the Fund had asked that it be granted a subordinated claim that would receive the same treatment in the Debtors' chapter 11 cases that a late-filed claim would receive in a chapter 7 liquidation pursuant to section 726 of the Bankruptcy Code. The Court noted that in chapter 11 cases claims are normally either allowed or disallowed, and also that Rule 3003(c)(2) of the Federal Rules of Bankruptcy Procedures states that if a claim is not timely filed then the holder of that claim "shall not be treated as a creditor with respect to such claim for the purposes of voting and distribution." Fed. R. Bankr. P. 3003(c)(2). The Court therefore expressed some skepticism at the notion that the Court could grant the relief the Fund suggested. However, the issue before the Court at the prior hearing was whether the late filings should be excused, and not how the late-filed claims were treated under the proposed Plan, and issues regarding the proposed allowance of a subordinated claim had not been raised in the initial motion papers. The Court held that the Fund could object

3

to the Plan if the Fund believed that the Bankruptcy Code required that the Fund's late-filed claims be treated as subordinated claims in the Debtors' chapter 11 cases, and if the Fund made such an objection the Court would consider the issue at the confirmation hearing.  *See* Bench Decision, April 3, 2019 [Dkt. No. 187], at 15.  The Fund has now made such an objection, and it has asserted other objections as well.

**The NYC Department of Finance**.  The New York City Department of Finance filed a proof of claim on April 26, 2018, and it amended the claim on April 8, 2019.  The claim asserts that the Debtors owe commercial rent taxes, general corporate taxes and unincorporated business taxes for various periods, plus interest and statutory penalties.  The Debtors contended that the filed claim should be treated as though it had only been filed against Manhattan Jeep and not against ARF, but the Court rejected that contention for reasons that were stated on the record on May 10, 2019.[2]  The Department of Finance has objected to certain exculpation provisions in the Plan, as described below.

## The Fund's Objections

The Fund asserted a number of objections to confirmation of the Debtors' plan of liquidation.  The Court has carefully considered each objection and has determined that each objection lacks merit.

**1.    The Failure to Identify Each Retained Cause of Action**

Section 1125 of the Bankruptcy Code requires debtors to prepare a disclosure statement that will explain the relevant terms of a plan of reorganization to creditors.  In this case the draft disclosure statement was made available for comment or objection by parties in interest.  No

---

[2]    Disputed issues regarding the amounts of the claim and the portions of the New York City Department of Finance claim that may be entitled to priority under section 507 of the Bankruptcy Code are still outstanding.

4

party in interest objected to the proposed disclosure statement. The Court entered an Order that approved the disclosure statement on March 20, 2019 [Dkt. No. 179], and the final version of the disclosure statement was filed on March 21, 2019 and mailed to creditors.

The disclosure statement and the Plan each plainly state that the Debtors will retain the right to pursue any and all causes of action that they may have, including actions to recover preferences or fraudulent transfers. *See* Amended Disclosure Statement [Dkt. No. 180] at 23; Amended Plan of Liquidation [Dkt. No. 181] at 3, 4, 19. They also state that the failure to identify any individual cause of action "shall not constitute, nor be deemed to constitute, a release or waiver of such cause of action," and that the intent was to preserve "any and all" causes of action except as expressly stated otherwise in the Plan. *Id.*

In its confirmation objection, the Fund argues that the disclosure statement and Plan do not provide sufficient detail about the causes of action that might be available. The Fund does not take issue with the clarity of the statements in the Plan and disclosure statement that preserve "all" causes of action. Instead, the Fund argues that a detailed listing of each claim, and its prospects, was necessary so that creditors could make informed decisions. The Fund also argues that the Bankruptcy Code requires a detailed listing of each cause of action in order for the Debtor to retain the rights to pursue them, and that the failure to list causes of action therefore means that valuable assets might be lost.

To the extent that the Fund is complaining about the adequacy of the disclosures that were provided to creditors, the objection is too late. The Court already entered an Order that found that the disclosure statement provided adequate information and approved the disclosure statement, without objection by the Fund or by any other party. That Order is final and binding and no motion to modify its terms has been filed.

The disclosure objection also is without merit, even if it were treated as timely. The Plan provides that all recoveries will be allocated to creditors in order of priority and then to equity if (but only if) creditors are paid in full, so that there is nothing about the allocations of the proceeds of possible litigation that required greater disclosure about individual claims. There are cases in which a particular litigation is of such significance that there ought to be disclosure about its prospects and its possible effects on creditors, but no such contention is made here. The Debtors have stated that they are not aware of any claim of such significance that its pursuit would make a material difference in creditors' recoveries, and the Fund has not questioned that conclusion or identified any such claim.

The Fund also suggests that the Debtors may lose the right to pursue causes of action that are not explicitly listed in the Plan and disclosure statement. The Court disagrees.

Section 1123(b) of the Bankruptcy Code lists permissible provisions in a plan or reorganization. Section 1123(b)(3) states that a plan may provide for "the retention and enforcement" by the debtor of any claim or interest. The Plan and disclosure statement plainly provide in this case for the retention and enforcement of all claims and interests. There is no requirement in section 1123(b)(3) that each retained claim be specifically identified in order to be retained.

The Fund nevertheless argues that a detailed list is required as a matter of law. In making this argument the Fund relies primarily on the decision in *Harstad v. First Am. Bank*, 39 F.3d 898 (8th Cir. 1994). In *Harstad*, however, the proposed plan of reorganization said nothing about preserving the right to pursue claims, and also said nothing about who would be entitled to the proceeds of such claims. The only arguably relevant provision of the Plan was found in the retention of jurisdiction section, which said the court would have jurisdiction over the

determination of causes of action. In other words, the problem in *Harstad* was that there was not even a general reservation of a right to pursue the estate's claims. That is not the case here. The Plan in this case clearly provides that the debtors reserve the rights to pursue all claims and that the proceeds will be paid out to creditors or, if creditors are paid in full, to holders of equity interests.

The Fund also relies on other decisions from other jurisdictions and circuits in arguing that a detailed list of retained claims is required as a matter of law. To the extent that those impose such requirements the Court disagrees with them. The better view, and the one that reflects the prevailing practice in this district, was described in *MF Global Holdings USA Inc. v. Heartland Co-Op (In re MF Global Holdings Ltd.)*, 2017 Bankr. LEXIS 1025 (Bankr. S.D.N.Y. Apr. 13, 2017). In that decision, Judge Glenn noted that "bankruptcy courts, and subsequent appellate rulings in the Second Circuit, in Chapter 11 cases, have adopted the view that a debtor is not required to provide a specific description of every claim the debtor intends to pursue. Doing so would serve no useful purpose where claims are not being extinguished." *See also In re American Media, Inc*., 2010 WL 5483463, at *10 (Bankr. S.D.N.Y. Dec. 20, 2010) (noting that "the Plan appropriately provides for the preservation by the Debtors of *any* [causes of action] whatsoever, whether known or unknown, in law, equity or otherwise . . . in accordance with Bankruptcy Code section 1123(b)(3)(B). The [plan] provisions regarding the retained [causes of action] are appropriate and are in the best interests of the Debtors, the Estates and all Holders of Claims and Interests.") (emphasis added).

The inclusion in a plan of reorganization of a general provision retaining claims, without a listing of individual claims, was approved and given effect in *In re I. Appel Corp.*, 300 B.R. 564, 569 (S.D.N.Y. 2003), and that approval was affirmed by the Second Circuit Court of

7

Appeals at 104 Fed. Appx. 199 (2d Cir. 2004). The approval of the practice by the Court of Appeals removes any doubt, in this Circuit, as to the effectiveness and propriety of such a general retention provision.

The Fund cites to two decisions from this district that purportedly reached contrary conclusions, but the cited decisions are not on point. The Fund has cited to *Kunica v. St. Jean Fin., Inc.*, 233 B.R. 46, 56 (S.D.N.Y. 1999), but that was a case where a debtor was faulted for trying to hide claims in order to keep them from being pursued for the benefit of creditors. The Fund has also cited to *In re Galerie Des Monnaies, Ltd.*, 62 B.R. 224 (S.D.N.Y. 1986), but that was a case where the debtors had explicitly stated in their disclosure statement that they had reviewed potential preference actions and had determined that no valid preference claims could be pursued. In *Galerie Des Monnaies* the Court held that the debtor' prior statement estopped the debtor from later pursuing a preference action. No such thing is alleged here.

Requiring a specific list of retained claims is not required by the Bankruptcy Code, and also would be a bad idea. It is often the case that an analysis of preference claims is made by a post-confirmation liquidation trust. There is simply no reason why the confirmation of a plan should be held up, or why a debtor's emergence from bankruptcy should be delayed, or why the onset of creditor distributions should be delayed, just because all potential causes of action have not yet been fully identified and evaluated. *See Cooper v. Tech Data Corp. (In re Bridgeport Holdings, Inc.)*, 2005 Bankr. LEXIS 1552 (Bankr. D. Del. Aug 12, 2005) (holding that a general reservation of rights to pursue claims was sufficient, and distinguishing *Harstad* and other prior decisions); *Cohen v. Tic Fin. Sys. (In re Ampace Corp.)*, 279 B.R. 145, 160 (Bankr. D. Del. 2002) ("[I]n my opinion, a general provision in a plan of reorganization indicating the type or category of claims to be preserved should be sufficiently specific to provide creditors with notice

that their claims maybe challenged post-confirmation[.]"); *Peltz v. Worldnet Corp. (In re USN Communs., Inc.)*, 280 B.R. 573 (Bankr. Del. 2002) (holding that there is nothing in section 1123 that could be construed as requiring that every claim and interest be listed in order to be preserved).

2. **Decisions Regarding the Pursuit of Claims**

The Fund also argued that the Debtors might not pursue potential causes of action with the same vigor that a chapter 7 trustee might exhibit. The Court noted that the Schedules included lists of persons who had received transfers that could be the subject of avoidance actions, and suggested that the confirmation order could require the Debtors to file a statement, within forty-five days after confirmation, listing the avoidance actions that the Debtors wished to pursue and those claims that would be dropped. The Court also suggested that the confirmation order could further provide that parties would have the right to object to the Debtor's decisions and that the Court would retain the right to appoint an independent party to pursue avoidance actions if the Court determined that the Debtors' decisions not to pursue them were unreasonable. The Fund's counsel agreed that this would be acceptable and would resolve the Fund's objection, and after discussion the Debtors' counsel agreed. Those terms will be incorporated into the confirmation order as an agreed modification to the Plan.

3. **Claims Filed by Insiders**

The Fund noted that the Debtors had amended their statements of financial affairs to reflect the fact that three insiders had filed proofs of claim based on loans they had made. The Fund objected that the Debtors might not have sufficient incentive to pursue objections to such claims. The Fund's counsel then questioned the Debtors' witness about the insiders' claims. After such questioning the Fund's counsel acknowledged that the Fund was not aware of any

ground to object to the claims and that the Fund had no objection to confirmation of the Plan based on the insider claims.

**4.      Objections Based on the Failure to Classify the Fund's Late-Filed Claims For Purposes of Distribution Under the Plan**

The Fund argued that its late-filed claims would be entitled to a subordinated position in the distribution hierarchy if these were cases under chapter 7 of the Bankruptcy Code, because section 726(a)(4) of the Bankruptcy Code provides for distributions on late-filed claims if timely-filed claims have been paid in full. It therefore argued that it should receive the same treatment under the Debtors' chapter 11 plans. However, section 726 is part of Subchapter II of chapter 7. Section 103(b) of the Bankruptcy Code states clearly that the provisions of Subchapter II apply "only" in a chapter 7 case, and not in a chapter 11 case. *See* 11 U.S.C. § 103(b).

Late-filed claims are treated differently in chapter 7 cases than in chapter 11 cases. Section 502 of the Bankruptcy Code provides generally that a proof of claim should be allowed except to the extent it is objectionable on various grounds. One of the grounds for objection is that the claim "is not timely filed." *See* 11 U.S.C. § 502(b)(9). As noted in the Collier's treatise, this language was added to section 502 "to overrule case law holding that tardily filed claims were allowable." *See* 4 COLLIER ON BANKRUPTCY ¶ 502.03[10][a] (16th ed. 2019); *see also In re Husmann*, 276 B.R. 596 (Bankr. N.D. Ill. 2002) (noting that one impetus for section 502(b)(9) was the desire to overrule cases that had held that late-filed claims could be allowed in chapter 13 cases). There is an exception to this exception if a claim is late-filed "as permitted under paragraph (1), (2) or (3) of section 726(a) of this title." *Id*. However, as noted above section 726(a) only applies in a chapter 7 case. Section 726 does not "permit" a late filing in a chapter

10

11 case, because section 726 does not apply in a chapter 11 case. *See In re Tribune Company*, 506 B.R. 613, 617 (Bankr. D. Del. 2013).

Rule 3002 of the Federal Rules of Bankruptcy Procedure governs the filing of claims in a chapter 7 case, but a different rule (Rule 3003) governs the filing of claims in chapter 11 cases. Rule 3003(c)(2) states explicitly that if a claim is not timely filed in a chapter 11 case the holder of that claim "shall not be treated as a creditor" with respect to that claim for purposes of voting and distribution. *See* Fed. R. Bankr. P. 3003(c)(2). In other words, a claimant in a chapter 11 case whose claim is not scheduled as being due and owing without dispute or contingency, and who does not file a timely proof of claim, and whose failure to file a timely claim is not excused (either on grounds of excusable neglect pursuant to Rule 9006 or perhaps on due process grounds due to a lack of proper notice), is to be treated as though the claimant were not a creditor at all for purposes of receiving distributions under a plan. The relief that the Fund seeks – namely, to be placed in a newly-created class of late claimants, and to be granted a subordinated right of distribution rather than no right of distribution – is in direct conflict with the terms of Rule 3003(c)(2).

There are good reasons why late-filed claims are treated differently in chapter 11 cases. The distributions that creditors receive in chapter 11 are determined by the provisions of a confirmed plan of reorganization. The participants in the chapter 11 process need to know what claims are entitled to receive distributions so that the value of a reorganized enterprise can be divided among the constituents. If late-filed claims automatically were to be recognized (even on a basis that was subordinated to general unsecured creditors), then the constituents in a chapter 11 case, including the existing equity owners, could not negotiate with confidence as to how to divide the value of the reorganized business. As one court observed:

11

> There are important policy reasons why tardily filed claims are allowed in Chapter 7 cases and disallowed in Chapter 11, 12 and 13 reorganizations. In a reorganization, the debtor must know, with certainty, the amount owed to creditors so as to formulate a feasible reorganization plan. Thus, a bar date for claim allowances is necessary for the administration of the reorganization. In a Chapter 7 liquidation case, the policy reasons to set a bar date for claims is much weaker. The allowance of a late claim is less harmful to other creditors. In a Chapter 7 case, the balance of any unclaimed funds is paid to the debtor. 11 U.S.C § 726(a)(6). While Sections 726(a)(2)(C) and (a)(3) do not guarantee payment of late claims, any late claims could be subtracted from the surplus funds that would otherwise be returned to the debtor.

*Perry v. First Citizens Fed. Credit Union*, 304 B.R. 14, 22 (D. Mass. 2004) (internal citations omitted) *see also Midland Cogeneration Venture Ltd. P'ship v. Enron Corp. (In re Enron Corp.)*, 419 F.3d 115, 127-28 (2d Cir. 2005) (bar date orders serve an essential function in bankruptcy proceedings and that in the absence of finality complex negotiations would be undermined and "reorganization would be impossible").

In short, late-filed claims are not "allowed" claims in chapter 11 cases. The gist of the Fund's motion is that the Court and the parties should nevertheless merely subordinate the late-filed claims rather than disallowing them. But that is not the result for which Congress has provided in chapter 11 cases. None of the provisions of section 510 (which address the subordination of claims) relate to late-filed claims. The Bankruptcy Code contemplates the disallowance of late-filed claims in chapter 11, not their reclassification or their conversion into a different, subordinated form of allowed claim.

The Fund urges me to hold that Rule 3003(c)(2) is contrary to the provisions of section 502(b)(9) and therefore is invalid insofar as it bars a late-filed claim from sharing in distributions in a chapter 11 case. But the more natural interpretation of section 502(b)(9) is that the exception for the allowance of late-filed claims applies only in chapter 7 cases, for the reasons stated above. In my view, it would be a misinterpretation of section 502(b)(9) to hold that it

12

conflicts with the terms of Rule 3003(c)(2). I note that the Federal Rules of Bankruptcy Procedure are promulgated by the United States Supreme Court pursuant to the authority granted under section 2075 of title 28 of the United States Code. *See* 28 U.S.C. § 2075. I ought to be very cautious in holding that any such rule is in conflict with the statute, and in this particular case the alleged "conflict" is without substance.

One could argue as a policy matter that where (as here) a chapter 11 plan provides for a liquidation rather than a reorganization there is no need to apply a rule regarding the treatment of late-filed claims that differs from the rule that prevails in chapter 7. But that is an argument to be addressed to Congress. Congress has permitted a chapter 11 plan to provide for a liquidation rather than a reorganization. *See* 11 U.S.C. §§ 1123(a)(5)(D), 1123(b)(4). There is no room in the language of section 103(b) of the Bankruptcy Code, or in section 502(b)(9), for a court to hold that the late-claim provisions of section 726 apply in some chapter 11 cases (those that involve a liquidation) but not in those chapter 11 cases that involve a reorganization. The issue before the court is a binary one – the late-claim provisions of section 726 either apply in chapter 11, or they do not. The Court believes that applying the late-claim provisions of section 726 in a chapter 11 case would require an illogical interpretation of section 503(b)(9) of the Bankruptcy Code and would run afoul of the clear terms of section 103(b) and Rule 3003(c)(2).

5. **Objection that the Plan Fails to Meet the "Best Interests of Creditors" Test Because It Fails to Provide Subordinated Distribution Rights to Late-Filed Claimants**

The Fund also argues that its late-filed claim must be given the same treatment that it would receive in a chapter 7 case, because otherwise the plan would violate the "best interests of creditors" test that is embodied in section 1129(a)(7) of the Bankruptcy Code.

Section 1129(a)(7) provides that a plan may not be confirmed unless "each holder of a claim" in an "impaired class" of creditors either has accepted the plan or "will receive or retain

13

under the plan on account of such claim or interest property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the debtor were liquidated under chapter 7 of this title . . ." 11 U.S.C. § 1129(a)(7). There are two problems with this argument.

First, it is possible that the general unsecured creditors of ARF may be paid in full, but no party has contended that there is any likelihood that the general unsecured creditors of Manhattan Jeep will be paid in full. Accordingly, a subordinated class of "late filed" creditor claims would receive nothing if Manhattan Jeep were liquidated in a chapter 7 case, just as they will receive nothing under the proposed Plan. As to Manhattan Jeep, no "best interests" issue could exist.

Second, the Fund's "best interests" argument wrongly presumes that the Fund's late-filed claims are entitled to the protections of section 1129(a)(7). The Plan specified classes of holders of "allowed" claims. The Fund's late-filed claim would have been part of that class if it had been timely filed, but the claim was not timely filed. It is not an allowed claim and is not entitled to be treated as one, and it is not part of any "class" of claims specified in the Plan. Nor is the Fund entitled to insist that the plan establish a separate, new "class" for late-filed claims, for the reasons stated above. As a holder of late-filed claims the Fund is not a member of any "class" of claims under the Plan and is not entitled to the protections of section 1129(a)(7).[3]

The Fund argues that holders of equity interests should never receive distributions if any creditors (late-filed or otherwise) are left unpaid, and that this might occur in the case of ARF.

---

[3] The primary relief sought by the Fund in its prior motions, and on appeal, is the inclusion of its claims as general unsecured claims, and not for their classification as subordinated claims. If the Fund were to obtain such relief from the bar date then it would share equally with other general unsecured creditors, and no "best interests" issue would exist. The "best interests" issue arises only to the extent that the Fund, as a form of alternative relief, contends that a new class of subordinated late-filed claims should be created and that its claims should be "allowed" as part of that newly-created class.

14

The Court has sympathy for the contention, but once again the Fund's displeasure with the structure of chapter 11 is an issue for Congress to address. One could argue that many kinds of "disallowed" claims should more fairly be treated as subordinated claims that should retain a right to be paid before distributions are made to equity, including claims by landlords and others whose claims are restricted by various provisions in section 502 of the Bankruptcy Code. But that is not the result that Congress has specified. Chapter 11 of the Bankruptcy Code contemplates that the holders of "allowed" claims and "allowed" interests will share in distributions. The consequence of the Fund's failure to file a timely withdrawal liability claim is that the Fund has no allowed withdrawal liability claim in the Debtors' chapter 11 cases. The Fund therefore "shall not be treated as a creditor with respect to such claim for the purposes of voting and distribution." Fed. R. Bankr P. 3003(c)(2). "Shall not" means exactly that – the Fund is not entitled to any distribution or any voting rights. The "best interests" test protects claimants who are entitled to be treated as creditors in the chapter 11 process, not parties whose claims are late-filed. *See In re Tribune Company*, 506 B.R. 613, 617 (Bankr. D. Del. 2013) (holding that the best interests test is applicable to the treatment of claims that are allowed in a chapter 11 case but not to the treatment of tardy claims).

The Court therefore rejects the Fund's contention that the Debtors' plan of reorganization was required to classify the Fund's late-claim and was required to provide a subordinated treatment of the late-filed claim that would have been similar to the treatment that the Fund would have received in a chapter 7 liquidation.

**6.       Objections Based on the Failure to Subordinate Penalty Claims**

The Fund has made another "best interests" objection: namely, it contends that the failure of the Plan to subordinate "penalty" claims means that general unsecured creditors (including the

Fund with respect to its $2,994 allowed claim against Manhattan Jeep) will not receive distributions under the Plan that are at least equal to the distributions they would have received in a chapter 7 case, because the penalty claims would be subordinated in a chapter 7 case. *See* 11 U.S.C. § 726(a)(4). There are two problems with this contention.

First, the Fund has standing to assert this objection in the Manhattan Jeep case by virtue of the claim that was listed in favor of the Fund on the Manhattan Jeep Schedules of Assets and Liabilities. However, the Fund has no allowed claim against ARF. As such, the treatment of other creditors does not affect the treatment of any claim owned by the Fund and raises no "best interests" issue as to how the Fund is treated under the Plan insofar as it relates to ARF.

Second, the evidence made clear that no "best interests" issue exists. In order to compare each creditor's potential recovery under chapter 11 versus chapter 7, one must calculate a ratio that is equal to (a) the amount of the assets that would be available for distribution in each case, divided by (b) the total amount of the claims that would be entitled to share in a distribution. In this case, the Fund accepted the Debtors' estimate that in a chapter 7 liquidation the administrative expenses would be approximately $200,000 higher than they would be if the chapter 11 plan were to be approved – meaning that there would be $200,000 less for distribution in a chapter 7 liquidation. The Debtors estimated that approximately 80% of the expenses would be allocable to the Manhattan Jeep case. The evidence at the confirmation hearing also showed that most of the penalty claims filed against the Debtors were the claims filed by the New York City Department of Finance, and that the total of all of the penalty claims against Manhattan Jeep in both cases does not exceed approximately $140,000 (and probably is significantly less in the Manhattan Jeep case since the foregoing figure includes the entire penalty asserted with respect to commercial rent taxes, some part of which is attributable to ARF and not to Manhattan Jeep).

If the recoveries of creditors in chapter 7 versus chapter 11 are calculated in the manner described above, and if in a chapter 7 case for Manhattan Jeep the numerator (assets available for distribution to creditors) would be $160,000 less than in chapter 11, and the denominator (claims entitled to share in the distribution) would be reduced by no more than $140,000 – so that the reduction in assets would be greater than the reduction in claims entitled to distributions – then mathematically the recoveries in chapter 7 would necessarily be lower than the recoveries under the proposed chapter 11 plan.

In this case, the disclosure statement estimated that general unsecured creditors of Manhattan Jeep would receive distributions that could reach 40% of their allowed claims, though the estimate provided at the Confirmation Hearing (which no party challenged) was that recoveries are likely to be approximately 30%. If the assets available for distribution to Manhattan Jeep's creditors were to be reduced by $160,000 in a chapter 7 case, then the recovery percentages for those creditors in a chapter 7 liquidation could not equal or exceed 30% unless the subtraction of penalty claims were to reduce the amount of claims that were entitled to share in a distribution by $533,333 or more ($160,000 divided by .3). At a recovery percentage of 40% there would have to be more than $400,000 of penalty claims ($160,000 divided by .4) in order for a chapter 7 recovery to exceed a chapter 11 recovery. The amount of penalty claims that have been filed are far less than those amounts, so the different treatment of penalty claims in a chapter 7 liquidation would not result in a higher recovery for other general unsecured creditors.

Accordingly, the treatment of penalty claims under the Plan cannot and does not create a "best interests" issue and does not violate the terms of section 1129(a)(7).

**The NYCDOF Objection**

The New York City Department of Finance objected to provisions of the proposed Plan that it believed could limit the Department's rights to complain, or to hold people accountable, for the manner in which they responded to the Department's requests for further information regarding taxes that were owed. At the Confirmation Hearing the Court presumed that the Plan must have contained an "exculpation" provision that freed the Debtor and its officers from liability for acts taken during the course of the bankruptcy case, and suggested that any such exculpation provision could be modified to address the Department's objection. However, a closer look at the Plan reveals that there is no such "exculpation" provision. Instead, the "release" cited by the Department of Finance is a provision under which the "Debtors shall be deemed to have released" certain claims owned by the Debtors themselves. *See* Plan, § 11.2. The simple answer to the Department's objection is that section 11.2, by its terms, does not even purport to modify, release or affect in any way any rights or remedies that the Department may have with respect to the handling of tax audits or responses to the Department's requests for information. The objection therefore has no merit.

**Conclusion**

The Debtors have established that the Plan meets the requirements for confirmation, and the objections to confirmation are overruled for the reasons stated above. A separate Order will be entered that confirms the Plan.

Dated: New York, New York
      May 15, 2019

                                  **/s/ Michael E. Wiles**
                                  HON. MICHAEL E. WILES
                                  UNITED STATES BANKRUPTCY JUDGE